George AKRIDGE, Petitioner-Appellant,

v.

Joe S. HOPPER, Warden, Georgia State Prison, Respondent-Appellee.

No. 76–2433.

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1977.

Clyde Hurt Feil, Atlanta, Ga. (Court-appointed), for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., James L. Mackay, B. Dean Grindle, Jr., Asst. Attys. Gen., Richard L. Chambers, Deputy Atty. Gen., John C. Walden, Senior Asst. Atty. Gen., Robert S. Stubbs, II, Chief Deputy Atty. Gen., Daryl A. Robinson, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

This is a federal habeas corpus effort by a Georgia state prisoner to avoid the consequences of a state court plea of guilty to a charge of incest.

The state court record shows that before Akridge's plea was accepted he was first sworn and thereafter stated that (1) he was

not then under the influence of any alcohol, drugs, narcotics, or pills; (2) he understood the charges against him; (3) he knew that he could be imprisoned for as much as twenty years; (4) no promise or threat from any source had influenced him to plead guilty; (5) he had had time to confer with his attorney; (6) he was satisfied with his attorney's services; (7) and he was, in fact, guilty.

These, and similar, statements were reduced to writing. Akridge signed the resulting affidavit in a clear, legible hand.

The appellant confesses that his troubles began with a "three weeks drinking spree". This culminated in an affidavit, filed by the appellant's wife, charging that on September 2, 1971, he *raped* his thirteen year old daughter. He was never indicted on this charge. Instead, the District Attorney filed a formal accusation that Akridge had committed the crime of incest in that he did unlawfully

> "engage in sexual intercourse with Connie Akridge to whom he knew he was related by blood as follows: George Akridge is the father of Connie Akridge."

Counsel was appointed for Akridge. After conferring with this attorney for an hour or so, Akridge entered his guilty plea and was sentenced to the maximum, imprisonment for twenty years.

■ Since this is a "guilty plea" case, the standard for our review is prescribed by *Tollett, Warden v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). If Akridge's guilty plea was intelligently and voluntarily entered, with the advice of counsel, and if that advice was within the standards of *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), there is no room for federal habeas corpus intervention. *Tollett, supra,* has been in the books for more than three years but it seems that the word gets around slowly. We are continuing to confront cases in which lawyers and litigants vigorously seek the invalidation of state court guilty pleas on grounds which *Tollett* and *McMann* have foreclosed.

Akridge filed his state habeas corpus petition on September 20, 1974. It did not allege, in plainly stated terms, that the plea of guilty had been unintelligently or involuntarily entered. Instead, it was charged only that the prisoner had ineffective assistance of counsel. It fully appears, however, that the state court read the petition with the liberality usually accorded *pro se* petitions.

The petition charged that Conger's appointed counsel "coerced" the prisoner to plead guilty to carnal knowledge, a lesser degree of the charge of rape, leading the "petitioner to believe that he would be found guilty of the charge of rape and be sentenced to the electric chair or life imprisonment", that the petitioner "could receive only from one to twenty years if he plead guilty to the lesser degree charged, but that he didn't believe petitioner would receive the maximum time, probably three years and probation".

Then the petition further averred that *"petitioner agreed to enter a plea of guilty* (emphasis ours) to the lesser degree charge because of his fear of possibly receiving the electric chair or life imprisonment", but that he had asked counsel to seek an adjournment so that he "might obtain his own paid counsel". Counsel informed him that such an adjournment could not be obtained. He further charged that during his state court appearance counsel did not say anything in his behalf. That his counsel had not thoroughly investigated every possible defense that would reflect any beneficial relief for the client. There was no allegation as to what favorable witnesses might have been brought in or as to what defenses might have been raised but which were nevertheless ignored or overlooked.

The state court hearing was held January 8, 1975. Akridge was represented by counsel. Our district court found from the state court record that there had been a full and fair hearing in the state habeas court. With that we agree.

Petitioner testified in his direct examination that he did not have any money when he was jailed and that he was unable to

employ counsel of his own selection. This, of course, destroyed the allegations about wanting an adjournment to employ counsel.

Petitioner described his interview with appointed counsel, in which he said that on account of his drinking he knew nothing about the case. He admitted that counsel advised him that the best thing he could do would be to plead guilty to a lesser offense. He said that court appointed counsel explained the rape charge to him, its legal consequences, and the penalty that might be assessed.

The petitioner testified that he had pleaded guilty to avoid the consequences of a possible conviction of rape, that he then knew the range of penalties inherent in such a plea. His exact words were: "[T]hat life sentence [for rape] led me to plead guilty"; that he knew "the punishment could be from one to twenty years". He did not question the affidavit he had signed in open court when he entered his guilty plea.

The state court found that Akridge had not shown a failure on the part of appointed counsel to render reasonably effective service. The Supreme Court of Georgia affirmed in an unpublished written opinion which is a part of the record before us.

Petitioner then repaired to the United States District Court, which, on the basis of the state court record, again denied relief.

■ *McMann v. Richardson, supra,* 770–771, 90 S.Ct. 1441, laid down the principle that reasonable competency of counsel is not to be judged on whether a court might retrospectively consider it right or wrong. Rather, the question is whether that advice was within the range of competency demanded of attorneys in criminal cases.

■ *Tollett,* 411 U.S. at 266, 267, 93 S.Ct. 1602, teaches that a prisoner who pleads guilty on the advice of counsel and thereafter attacks his own plea *must demonstrate* (emphasis added) that the advice was not up to the required standard.

The Supreme Court further recognized, 411 U.S. 268, 93 S.Ct. 1608, that

"Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law."

All this leads us to ask here:

What advice could Akridge's appointed counsel have given him that he did not give?

Akridge did not want to go to trial on the capital charge. He was a man of limited education but he knew enough not to want to run that risk.

■ A reasonable alternative was to plead to a lesser offense. The argument might be made that there should have been a strong effort to obtain a recommendation for less than twenty years. It is equally as reasonable to anticipate that the prosecution would have countered with the view that if there was to be a trial it might as well be for rape, not incest. This appellant had very little room for strategy other than saving the state the necessity for any trial at all. Any reasonably alert lawyer would be wide awake to the precarious situation of a man, in this case charged by his own wife with the rape of a thirteen year old daughter, especially when that client said that he could remember nothing of the case and made not a single suggestion of any favorable witness or other credible defense.

An objective appraisal of the matter is that the petitioner has failed to demonstrate that his plea of guilty was invalid because of the denial of any federally guaranteed Constitutional right.

The judgment of the District Court is AFFIRMED.