## Richmond

### Raymond Earl Stokes

### v.

### Warden, Powhatan Correctional Center

September 9, 1983.

Record No. 821721.

Present: All the Justices.

112

*Christopher M. Malone (Thompson & McMullan,* on briefs), for petitioner.

*Thomas D. Bagwell, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for respondent.

STEPHENSON, J., delivered the opinion of the Court.

Raymond Earl Stokes was convicted of first-degree murder in the Circuit Court of the City of Lynchburg and sentenced to life imprisonment. Invoking our original jurisdiction, Stokes has petitioned for a writ of habeas corpus. He alleges his trial counsel's ineffective assistance invalidates his conviction. Although Stokes contends his attorney was ineffective in failing to object to three jury instructions offered by the Commonwealth, we need consider only Instruction 8, which told the jury that "every person is presumed to have intended the natural and probable consequences of his voluntary acts." The questions presented, therefore, are: (1) whether trial counsel was ineffective in failing to object to Instruction 8, and if so, (2) whether Stokes was prejudiced.

I

On July 22, 1979, Gracie Elizabeth Scott Lee was fatally shot in a neighborhood grocery store in the City of Lynchburg. An autopsy revealed that she died as a result of two bullet wounds. A witness at trial testified that Lee had been dating two men, Raymond Stokes and Joe Granger. Several hours after the shooting, Stokes was arrested. He told the police officer he had not seen Lee recently, and he denied having a pistol in his possession on July 22.

Stokes was tried by a jury on January 17, 1980. Two witnesses to the shooting testified at trial. The store owner saw Stokes enter the store and begin talking to Lee. The owner spoke with Stokes, advising him not to "[start] any trouble." Shortly thereafter, while watching television in the rear of the store, the owner heard "a couple of shots" and observed Stokes "sticking the gun down in front of his trousers going out the door."

The second witness, a customer, testified he saw Stokes and Lee arguing. He heard Stokes tell Lee that she could "stay here forever," after she refused to leave the store with him. The customer then saw Stokes pull a pistol from his pants and shoot Lee twice. Before the second shot, the witness heard Stokes say "die" as he stood over Lee and fired the gun at her. Thereupon, Stokes placed the pistol in his belt and left.

The defendant did not testify. The only evidence the defense presented challenged the credibility of the customer-witness by proof of a prior felony conviction.

Stokes' counsel told the trial court that he did not object to its giving Instruction 8. During closing arguments, the Commonwealth's Attorney placed considerable emphasis on the premeditation aspect of the instruction. Defense counsel argued that the killing resulted from a spat arising out of a lovers' triangle involving Lee, Stokes, and Granger. The jury found Stokes guilty of first-degree murder and fixed his punishment at life imprisonment. The trial court sentenced him in accordance with the verdict.

Stokes' trial counsel petitioned for appeal arguing only that the court erred in refusing a defense instruction regarding "heat of passion" and manslaughter and that the Commonwealth's Attorney's closing argument was inflammatory and prejudicial. Finding no reversible error on the grounds assigned, we refused the appeal. 221 Va. cxlvii (1980).

## II

■ Initially, we must decide the level of competence required for attorneys in criminal cases. In the past, we followed the "farce and mockery" standard. *See, e.g., Russell* v. *Peyton,* 207 Va. 469, 150 S.E.2d 530 (1966); *Peyton* v. *Ellyson,* 207 Va. 423, 150 S.E.2d 104 (1966); *Hoffler* v. *Peyton,* 207 Va. 302, 149 S.E.2d 893 (1966). This standard required a prisoner to prove by a preponderance of the evidence that his counsel's representation was so ineffective it reduced the trial to a farce and mockery.

More recently, the United States Supreme Court stated that the proper standard to be applied in determining effective assistance of counsel is whether counsel's conduct was "within the range of competence demanded of attorneys in criminal cases." *McMann* v. *Richardson,* 397 U.S. 759, 771 (1970). *See also Tollett* v. *Henderson,* 411 U.S. 258, 266 (1973). Until *McMann,* both Federal and State Courts applied the "farce and mockery" standard, but many jurisdictions now have adopted a "reasonable competence" standard.

All Federal Circuits, except the Second, apply the "reasonable competence" standard or some variation thereof. *See Dyer* v. *Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945 (1980) ("that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney"); *Cooper* v. *Fitzharris,* 586 F.2d 1325, 1328 (9th Cir. 1978), *cert. denied,* 440 U.S. 974 (1979) ("reasonably competent and effective representation"); *Reynolds* v. *Mabry,* 574 F.2d 978, 979 (8th Cir. 1978) ("that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances"); *United States* v. *Bosch,* 584 F.2d 1113, 1121 (1st Cir. 1978), *Akridge* v. *Hopper,* 545 F.2d 457, 459 (5th Cir.), *cert. denied,* 431 U.S. 941 (1977) (apply the *McMann* standard); *Marzullo* v. *Maryland,* 561 F.2d 540, 543 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011 (1978) ("the range of competence demanded of attorneys in criminal cases"); *United States* v. *Toney,* 527 F.2d 716, 720 (6th Cir. 1975), *cert. denied,* 429 U.S. 838 (1976) ("Whether counsel is reasonably likely to render and does render reasonably effective assistance."); *United States Ex Rel. Williams* v. *Twomey,* 510 F.2d 634, 641 (7th Cir.), *cert. denied,* 423 U.S. 876 (1975) ("legal assistance which meets a minimum standard of professional representation."); *United States* v. *DeCoster,* 487 F.2d 1197, 1202 (D.C.

Cir. 1973) ("reasonably competent assistance of an attorney acting as his diligent conscientious advocate"); *Moore* v. *United States,* 432 F.2d 730, 736 (3rd Cir. 1970) ("exercise of the customary skill and knowledge which normally prevails at the time and place"). *But see Rickenbacker* v. *Warden,* 550 F.2d 62, 65 (2nd Cir. 1976), *cert. denied,* 434 U.S. 826 (1977) (reaffirming the "farce and mockery" standard).

Many states also have adopted in principle the *McMann* standard of "reasonable competence." *See, e.g., Aldridge* v. *State,* 425 So.2d 1132, 1136 (Fla. 1982) (defendant must show "that a 'specific omission or overt act was a substantial and serious deficiency measurably below that of competent trial counsel' ") (quoting *Knight* v. *State,* 394 So.2d 997, 1001 (Fla. 1981)); *Spangler* v. *State,* 162 Ga. App. 624, 626, 292 S.E.2d 461, 463 (1982) ("reasonably likely to render and rendering reasonably effective assistance"); *State* v. *Tucker,* 97 Idaho 4, 8, 539 P.2d 556, 560 (1975) (" 'reasonably competent assistance of an attorney acting as his diligent conscientious advocate' ") (quoting *United States* v. *DeCoster,* 487 F.2d 1197, 1202 (D.C. Cir. 1973)); *State* v. *Williams,* 207 N.W.2d 98, 104 (Iowa 1973) ("effective assistance of counsel"); *State* v. *Zeitvogel,* 649 S.W.2d 945, 947 (Mo. Ct. App. 1983) ("care and skill a reasonably competent lawyer exercises to render a similar service under the circumstances"); *Villarreal* v. *State,* 643 S.W.2d 790, 793 (Tex. Crim. App. 1982), *modified on other grounds,* 645 S.W.2d 654 (Tex. Crim. App. 1983) (" 'reasonably likely to render and rendering reasonably effective assistance' ") (quoting *MacKenna* v. *Ellis,* 280 F.2d 592, 598, *modified on other grounds,* 289 F.2d 928 (5th Cir.), *cert. denied,* 368 U.S. 877 (1961)); *State* v. *Gilmore,* 76 Wash.2d 293, 456 P.2d 344 (1969) (reasonably effective assistance of counsel); *Carrico* v. *Griffith,* 272 S.E.2d 235, 237 (W.Va. 1980) (" 'the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law' ") (quoting *State* v. *Thomas,* 157 W.Va. 640, 665, 203 S.E.2d 445, 461 (1974)). *But see State* v. *Blackwood,* 60 N.C. App. 150, 298 S.E.2d 196 (1982), *Bass* v. *State,* 417 So.2d 582 (Ala. Crim. App.), *cert. denied,* 417 So.2d 588 (Ala. 1982) (upholding "farce and mockery" standard).

For a considerable period of time, we have been applying the reasonable competence standard, but until now, we have not had an opportunity to adopt it formally as the rule in this jurisdiction. We now hold, therefore, that the constitutional guarantee of the

assistance of counsel includes the right to the care and skill which a reasonably competent attorney would exercise for similar services under the circumstances.

## III

To satisfy the due process requirements of the Federal Constitution, the prosecution must bear the burden of proving all elements of the offense beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358, 363 (1970). An essential element of first-degree murder is proof that the homicide resulted from the accused's willful, deliberate, and premeditated acts. This element of specific intent distinguishes first-degree from second-degree murder. *Epperly* v. *Commonwealth,* 224 Va. 214, 231, 294 S.E.2d 882, 892 (1982); *Smith* v. *Commonwealth,* 220 Va. 696, 700-01, 261 S.E.2d 550, 554 (1980); *Baker* v. *Commonwealth,* 218 Va. 193, 195, 237 S.E.2d 88, 89 (1977); *Williams* v. *Commonwealth,* 128 Va. 698, 710, 104 S.E. 853, 859 (1920).

In *Sandstrom* v. *Montana,* 442 U.S. 510 (1979), the defendant was charged with the crime of "deliberate homicide," *id.* at 512, under Montana law. Sandstrom claimed he lacked the requisite intent to kill "purposely or knowingly," *id.,* an element of deliberate homicide, because, at the time of the homicide, he was suffering from a personality disorder aggravated by alcohol consumption. Over his objection, the trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513. The Supreme Court ruled that a reasonable jury could have viewed the presumption either as conclusive or as shifting the burden of persuasion to the defendant. Because either interpretation would have deprived Sandstrom of his Fourteenth Amendment due process right, requiring the prosecution to prove every element of the crime, the Court held the instruction was unconstitutional. *Id.* at 524.

Relying upon *Sandstrom,* Stokes asserts his trial counsel's failure to object to Instruction 8 constituted ineffective assistance of counsel. Instruction 8 reads:

> The Court instructs the jury that every person is presumed to have intended the natural and probable consequences of his voluntary acts. And it is not necessary that the intent to kill or do serious bodily harm should exist for any particular length of time prior to the killing, to constitute a willful, de-

liberate and premeditated killing. It is only necessary that such intent should come into existence at the time of the killing or at any previous time.

Since the first sentence is virtually identical with the *Sandstrom* instruction, we hold that the court erred by giving Instruction 8.

### IV

■ Next, we consider whether trial counsel was ineffective in failing to object to Instruction 8. Obviously, not every error made by an attorney during a trial constitutes ineffective assistance. "Effective" assistance is not synonymous with "successful" assistance, *Ellyson,* 207 Va. at 426-27, 150 S.E.2d at 107. Moreover, an attorney's trial tactics, while altogether appropriate at the time, may appear erroneous in retrospect.

However, in the present case, trial counsel failed to object to an instruction which the Supreme Court of the United States condemned seven months earlier. We are of opinion that a reasonably competent attorney in a criminal case would have known of a Supreme Court decision relating to such a fundamental right of an accused and would have objected to the instruction. Therefore, applying the reasonable competence standard, we hold that trial counsel was ineffective in failing to object to the instruction.

### V

■ Finding counsel ineffective does not necessarily mean a writ should be granted. In a collateral attack, a prisoner not only has the burden of proving ineffective assistance of counsel, but also must prove actual prejudice as a result. *Slayton* v. *Weinberger,* 213 Va. 690, 692, 194 S.E.2d 703, 705 (1973).

■ It is well established that a petitioner has a substantially heavier burden on collateral attack than on direct appeal. *United States* v. *Frady,* 456 U.S. 152, 166 (1982); *Engle* v. *Isaac,* 456 U.S. 107, 129 (1982); *Henderson* v. *Kibbe,* 431 U.S. 145, 154 (1977). The rationale behind the heavier burden is that a writ entails significant costs. *Engle,* 456 U.S. at 126. It "extends the ordeal of trial for both society and the accused," and its liberal use "degrades the prominence of the trial itself." *Id.* at 126-27. In addition, with the passage of time, a retrial may become more difficult if not impossible, defeating society's right to punish the guilty. *Id.* at 127.

■ In *Henderson,* the Court held that the issue in a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 431 U.S. at 154. The Court reaffirmed this test in *Frady,* stressing the importance of evaluating the error "in the total context of the events at trial." 456 U.S. at 169.

■ Applying these principles in the present case, we find that Stokes has failed to prove any actual prejudice resulting from the erroneous instruction. The evidence that Stokes willfully, deliberately, and with premeditation shot and killed Lee is overwhelming. Before he fired the first shot, he told her to "stay here forever." After shooting her once, he stood over Lee's wounded body, saying "die" and then fired the second shot. Evaluating this evidence "in the total context of the events at trial," 456 U.S. at 169, we find the requisite intent for a first-degree murder conviction manifestly established, and we cannot say the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Henderson,* 431 U.S. at 154.

■ In reaching this conclusion, we are not unmindful of the recent case of *Connecticut v. Johnson,* 460 U.S. 73 (1983), in which the Supreme Court in a plurality opinion rejected a harmless error argument concerning a *Sandstrom* instruction. The Court held that, with few exceptions, a *Sandstrom* instruction is grounds for reversal of the conviction. *Johnson,* however, involved a direct appeal, and as we have previously observed, an altogether different standard of review applies in a collateral attack.

We hold, therefore, that since Stokes was not prejudiced by the instruction, the writ of habeas corpus will be denied.

*Writ denied.*