## CIRCUIT COURT OF ROCKINGHAM COUNTY

Commonwealth of Virginia

v.

Charles W. Robinson, Jr.

April 16, 1987

By JUDGE PERRY W. SARVER

Charles W. Robinson, Jr., a juvenile of the age of 15 years (born July 8, 1971) was tried in this Court as an adult and without a jury on February 3, 1987. After hearing all of the evidence and arguments of Counsel, the Defendant was found guilty and on motion duly made, a presentence investigation report was ordered and returned to the Court under date of March 10, 1987, and the matter came on for sentencing on March 16, 1987. H. Clay Clark, III, Esquire, was counsel through all stages of the proceedings in the Juvenile and Domestic Relations District Court and at the trial of the matter in the Circuit Court, but on March 16, 1987, he moved to be relieved as counsel on the grounds that the Defendant had retained Mr. Bates and Ms. Cain as his attorneys. After hearing counsel the Court did relieve Mr. Clark from any further responsibility as counsel in this case, all as set forth in that Order of the Court which was entered on March 19, 1987.

On March 16, 1987, the Court also heard evidence and argument on that motion for a new trial filed herein by counsel and after hearing the evidence and argument of counsel, the Court took the case under advisement and continued the matter for further proceedings on April 20, 1987.

The Court now rules on the motion for a new trial filed herein. Having no authority before it at the time of the argument on March 16, 1987, the Court questioned counsel as to whether a motion for a new trial was the proper relief and counsel for the Defendant forwarded a Memorandum under date of March 27, 1987, addressing that issue. The Court is of the opinion that defense counsel have proceeded properly and if the Court is of the opinion that Defendant was denied effective assistance of counsel, then the proper remedy at this stage of the proceedings would be to grant a new trial pursuant to Rule 3A:15(c) which states in part that the court shall grant a new trial if it sets aside the verdict for any other reason (i.e. a reason other than striking the evidence or setting aside the verdict because the evidence is insufficient as a matter of law to sustain a conviction). As stated in 58 Am. Jur. 2d, *New Trial,* § 161:

> It has been held in a number of cases that where counsel for the accused is so manifestly incompetent or manages the case so grossly that injustice is done, a new trial will be granted. Indeed, there may be a denial of due process of law, and in some instances a denial of the constitutional right to have the assistance of counsel in a criminal case, where the attorney who represented the accused was so negligent or incompetent that the representation of the accused was a farce or a mockery of justice.

I am of the opinion that this relief can be granted at the trial level pursuant to Rule 3A:15(c), as well as at the appellate level pursuant to Virginia Code Section 19.2-317.1. Accordingly, if defense counsel has not met those standards imposed above, and also recited in greater detail in *Stokes v. Warden,* 226 Va. 111 (1983), on pages 115-117 thereof, and as further expanded upon in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), then Defendant is entitled to a new trial.

Defendant sets forth four separate grounds in the motion for a new trial which are as follows.

(1) Attorney Clark did not present any evidence at trial on February 3, 1987, although he knew of exculpatory evidence at time of trial.

(2) Attorney Clark did not call any witnesses, although there were witnesses to support the exculpatory evidence.

(3) Attorney Clark did not allow the Defendant, Charles W. Robinson, Jr., to testify in his own defense.

(4) A potential conflict of interest existed between the Defendant and one of the witnesses, whom Mr. Clark had represented at an earlier time.

In rendering this opinion, the Court will regroup these grounds since they are somewhat overlapping. The Court will discuss first, Issues 1, 2 and 4. Defendant and Mr. Clark gave conflicting testimony at the evidentiary hearing as to the strategy or the course of action chosen in trying this case. The Defendant testified at the hearing on March 16, 1987, that he had told Mr. Clark that there was another person involved (T. Johnson) and that he told Mr. Clark not to involve his friend. It was pointed out that Johnson could be charged. At this time, Mr. Clark pointed out that he had represented Mr. Johnson in times past. Defendant also told Mr. Clark that alcohol and marijuana were involved in the contacts between the Defendant, T. Johnson, Jeffrey A. Lyons (victim), and Allen Cline. Defendant more or less stated that the four were together by choice on the day in question and had a common interest of drinking beer and using marijuana. Defendant admitted that he had taken beer from Lyons but denied taking money from him by means of force or threats of force, etc. Defendant stated that he did not testify and wanted to testify but was told by Mr. Clark that there was no use in him testifying. Defendant acknowledged that a recess was taken after the Commonwealth rested her case in chief in order that he could discuss further with his attorney, whether or not he should testify, and he stated that he told Mr. Clark that he would be willing to testify. Later on in his testimony on March 16, he denied that he attempted to protect T. Johnson and said he wanted him to testify, but that Mr. Clark told him that there was no point in doing this.

Mr. Clark stated that he represented the Defendant in all proceedings in the Juvenile and Domestic Relations District Court and at the trial in this Court. He stated

that he met with the Defendant on several occasions and at times in the company of Defendant's parents due to the fact that he was only fifteen years of age and there was some difficulty in communicating with the Defendant and he felt that he could better communicate with him with the parents present. He stated that at first the Defendant denied any knowledge whatsoever of those events occurring on November 2, 1986 (the date of the offense). At the next meeting in connection with the preliminary hearing, Defendant had altered his position somewhat and stated that he had knowledge of the incident but that the charges were brought against the "wrong guy." On February 1, 1987, the Defendant first told Mr. Clark that he was involved and also that T. Johnson was involved but that Johnson had nothing to do with the robbery and was merely a bystander. He further told Clark that one person was robbed of the sum of $15.00 and that T. Johnson was talking to the other person. The other person to whom Johnson was talking would have been Allen Cline, and Defendant was talking to Jeffrey A. Lyons (the victim) which is consistent with the testimony of both Lyons and Cline, and also was consistent as to the amount of money taken from the person of Lyons, to wit: the sum of $15.00.

Karen Robinson, the Defendant's mother, also testified at the hearing on March 16, 1987, and among other things she stated that Mr. Clark suggested that perhaps it would be better if she would check with the store owner where Defendant stated that he, Johnson, Lyons and Cline purchased beer prior to the robbery. Mr. Clark's reasoning was that the store owner may be less suspicious if she made the inquiry rather than he, since all four of the persons involved in the robbery incident were juveniles. She did so and the store owner denied selling beer to any of the juveniles and stated that if they had beer then they got it from where Cline and Lyons worked. This is consistent with the testimony of Lyons and Cline in that they denied purchasing any beer at the store in question.

With regard to the last mentioned grounds in the motion for a new trial, while there could have been a conflict between Defendant and witness T. Johnson, it does not necessarily follow that there is a conflict of interest between Defendant and Mr. Clark. Attorney Clark had represented T. Johnson in times past but did not

represent him at the time of the proceedings now before the Court, and no evidence has been presented to the Court that would show that there was a continuing relationship between Mr. Clark and Johnson which adversely affected the ability of Mr. Clark to render effective assistance to his client, the Defendant.

The Court is of the opinion that Defendant was not denied effective assistance of counsel and while counsel for Defendant have furnished the Court with a multitude of cases, it is the Court's opinion that the Court need only address *Strickland v. Washington*, since this case is one of the most recent cases handed down by the United States Supreme Court addressing those issues now before this Court.

This Court starts with the proposition that:

> [T]he right to counsel is the right to the effective assistance of counsel . . . . Counsel . . . can . . . deprive a defendant of the right to effective assistance, simply by failing to render "adequate legal assistance." . . .
>
> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* 686.
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* 687.

The court further stated in *Strickland* and on page 687 that "the proper standard for an attorney performance

is that of reasonably effective assistance." The court further quoted several decisions from Federal Courts of Appeals quoting first from *McMann v. Richardson*, 397 U.S. 759 at 770, 771:

> [T]hat a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases." . . . The defendant must show that counsel's representation fell below an objective standard of reasonableness.

The court in *Strickland* at page 688, then proceeded to discuss counsel's function in the defense of a criminal case, stating that counsel's function is to assist the defendant, and hence owes the client a duty of loyalty, a duty to avoid conflicts of interest, and in addition, counsel must advocate the defendant's cause and consult with the defendant on important decisions, keep him informed of important developments in the course of the prosecution, and lastly counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

It is the opinion of the Court that Mr. Clark met these responsibilities. Apparently, there was some dissatisfaction by the Defendant and his parents as they did not feel that Mr. Clark met with them as frequently as he should have. However, taking into consideration the facts of this case, and even though the crime was a very serious crime, (having a minimum punishment of not less than five years and a maximum of life imprisonment) the facts in the case were relatively simple in that the only persons having direct knowledge of the crime were the victim and his friend Mr. Cline, T. Johnson, and one Ike Frye. Knowledge of Frye was not communicated to Mr. Clark. There also was the store owner, who at most could have contradicted the victim and Mr. Cline as to whether or ot beer was purchased on the date in question, but the store owner denied this to Defendant's mother and this was consistent with the testimony of the victim, Lyons, and his friend Cline.

The court, in *Strickland*, has cautioned that:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Citations omitted.) A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." . . . *Id.* 689.

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* 690.

In addressing the extent of counsel's investigation and judgment decisions in connection therewith the court in *Strickland* further stated:

[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. *Id.* 691.

Thus, viewing the communications between Mr. Clark and Defendant, the situation moved from one of complete denial of knowledge of the offense by Defendant to an admission of knowledge but denial of any culpability, and finally an admission by the Defendant that he was involved, that T. Johnson was present but had nothing to do with the robbery, but was only standing there. It is noted further in the presentence investigation report ordered, post-trial and after Defendant had been found guilty, that Defendant admitted striking the victim first and after the victim pushed him back, he then knocked the victim to the ground and took beer from him and while that scenario differs somewhat from the testimony of the victim, witness Cline and from what Mr. Clark testified that Defendant told him, it is substantially different from the position that Defendant now takes in connection with his motion for a new trial.

The Court is of the opinion that Mr. Clark acted reasonably throughout the case, in the investigatory stage, preparation and trial stage. Because of Defendant's frequent changes in his versions as to what occurred on November 2, 1986, Mr. Clark, understandably, was reluctant to have him testify. Notwithstanding, he gave Defendant

every opportunity to testify even to the point of requesting a recess after the Commonwealth rested its case to discuss this decision one last time.

Finally, and with regard to the alleged conflict of interest, the court stated in *Strickland* at page 692, in connection with a conflict of interest, that "prejudice is presumed when counsel is burdened by an actual conflict of interest . . . . Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'." It is the Court's opinion that there was no conflict of interest. Attorney Clark was not representing T. Johnson while these proceedings were pending and there is no evidence before the Court that a prior lawyer-client relationship between Johnson and Clark in any way carried over to these proceedings and adversely affected Clark's ability to effectively represent Defendant.

Finally, the court in *Strickland* stated that in adjudicating a claim of actual ineffectiveness of counsel that:

> [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results. *Id.* at 696.

Viewing all of the testimony presented before the Court on March 16, 1987, and after having reviewed the Court's trial notes taken at the trial on February 3, 1987, and further consideration of those statements made by the Defendant, post-trial, I am of the opinion that there was no breakdown of the adversarial process and that the Defendant has not been denied his right to effective counsel as guaranteed by the Sixth Amendment.

Accordingly, the motion for a new trial is denied and this matter must not proceed to sentencing as previously ordered.