COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Raphael and Senior Judge Petty
Argued at Richmond, Virginia

GEORGE JUAN WALKER

v.      Record No. 1559-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STUART A. RAPHAEL
FEBRUARY 6, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Stephen K. Armstrong (Armstrong Law LLC, on brief), for
appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

The carjacking victim here did not see who knocked her down and stole her SUV. The

victim's valuables were in the front seat at the time, and the handicap ramp was extended. A

short time later, George Juan Walker was spotted speeding along in the SUV. The handicap

ramp was still extended, shedding sparks as it dragged along the highway. After Walker crashed

while eluding police, the victim's valuables were still in the front seat. Walker seeks to set aside

his carjacking conviction, arguing that the Commonwealth failed to prove that he was the

perpetrator. But we find the evidence sufficient for the jury to have found beyond a reasonable

doubt that Walker committed the crime. So we affirm the conviction. And we do so while

clarifying that the "larceny inference" does not apply to carjacking.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On the morning of December 30, 2020, D.W. (the victim) and her husband were returning home from a doctor's appointment. Her SUV—a gray GMC Envoy—was equipped with a handicap ramp on the back for transporting her husband's scooter. The victim pulled into her driveway at about 11:50 a.m.,[1] turned off the car, and unloaded the scooter from the ramp. After helping her husband out of the car and into his scooter, the victim walked back to the driver's side. As she opened the driver's door and restarted the vehicle to retract the handicap ramp, the victim was attacked from behind. The carjacker "shoved" her, knocking her to the ground. Because the victim did not see her attacker, she could not tell if she had been carjacked by a man, a woman, or multiple people.

The carjacker drove off in the SUV. The victim's purse, wallet, and keys were still in the front seat, along with an envelope containing about $600 in cash that she had withdrawn from the bank. The victim watched as the SUV drove away, the handicap ramp still extended. She started to run after her car but then flagged down a neighbor who was driving by. The neighbor invited her to get in, and the victim called the police from her neighbor's car. They drove around searching for the SUV, but they could not find it.

At "just before noon" that day, at "about 11:50 or 11:55" a.m., Sergeant Pike of the Chesterfield County Police received an alert for "a stolen GMC Envoy." He got in his car and

---

[1] The victim said that the attack happened at about 11:50 "in the evening," but her testimony that it was "sunny" outside shows that she meant it was in the morning.

"headed towards Chippenham Parkway to try to intercept" it. As Pike "merged onto Chippenham Parkway," he spotted "the SUV moving at a very high rate of speed actually dragging a handicap ramp, . . . sparking down the highway right behind it." Pike turned on his emergency lights and radioed his dispatcher that he had found the stolen car. But the SUV drove past him as Pike merged onto the highway.

Sergeant Pike turned on his siren and pursued the SUV, which accelerated to speeds of 90 to 100 miles per hour. Pike testified, "At probably the last moment possible, the driver made a quick lane change . . . cutting over in front of other cars to get on [Interstate] 95 northbound." But the driver was going too fast to negotiate the offramp. Pike watched as the SUV lost control, hit the left Jersey wall, spun around, hit the right Jersey wall, and nearly flipped over the 75-foot elevated ramp. When the SUV came to a rest, it was facing Pike on the offramp.

Walker was the only person inside. After Walker crawled out through the driver's-side window, Sergeant Pike detained him at gunpoint until two other officers arrived to assist in the arrest. Pike found the victim's purse in the front seat. On top of the purse was a ripped-open bank envelope with cash inside. Some cash was also scattered about the seat. A total sum of $563 was recovered. When Pike searched Walker, the only thing of value on his person was a "sum of US currency" in his "right front pants pocket," but Pike could not remember how much was there.

Officer Cleud responded to the victim's home, arriving at around 12:10 p.m. While there, he learned that the SUV had crashed at the I-95 ramp. Cleud drove to the crash scene, "a couple of miles away," arriving around 12:25 p.m. Cleud collected the evidence from the front passenger seat, including the victim's purse, her cash, and her car key. Still photographs of those items, taken from Cleud's body camera, were introduced into evidence. Cleud returned the stolen items to the victim.

Walker was charged with carjacking (Code § 18.2-58.1) and felony eluding (Code § 46.2-817). On April 21, 2022, the trial court accepted Walker's no-contest plea to felony eluding and found him guilty of that charge. The court proceeded to a jury trial on the carjacking charge. After the Commonwealth presented the evidence described above, the trial court denied Walker's motion to strike and the jury found him guilty. The trial court sentenced Walker to 30 years' incarceration for carjacking with 10 years suspended, and 5 years for felony eluding.[2]

Walker noted a timely appeal.

ANALYSIS

A "person who commits carjacking" is "guilty of a felony punishable by imprisonment for life or a term not less than fifteen years." Code § 18.2-58.1(A). The crime of carjacking "means the intentional seizure" of another person's "motor vehicle . . . with intent to permanently or temporarily deprive another . . . of . . . possession or control by," among other things, "striking or beating, or by other violence to the person, or by assault." Code § 18.2-58.1(B). Because the victim testified that she never saw the carjacker, Walker argues that the Commonwealth's evidence failed to prove that he was the perpetrator.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018)). The sufficiency analysis "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to

---

[2] Walker was also convicted and sentenced to prison for grand larceny and felony eluding committed during the week preceding the carjacking offense at issue here. The trial court imposed a total sentence on all charges of 60 years' incarceration with 10 years suspended. Walker's appeal is limited to his carjacking conviction.

consider all of the evidence, without distinction, in reaching its determination.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 26-27 (2021) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).

A. *The "larceny inference" does not apply to carjacking.*

The Commonwealth argued on brief that Walker's identity as the carjacker was supported by the "larceny inference." Commonwealth Br. 7-8. "It is well established that 'once the [larceny] is established, the unexplained possession of recently stolen goods permits an inference of larceny by the possessor.'" *Montague v. Commonwealth*, 40 Va. App. 430, 437 (2003) (alteration in original) (quoting *Bright v. Commonwealth*, 4 Va. App. 248, 251 (1987)). "For the 'larceny inference' to arise, the Commonwealth must establish that the accused was in exclusive possession of recently stolen property." *Id.*[3] The Commonwealth maintained that the larceny inference sufficed, "*by itself*," to support Walker's carjacking conviction. Commonwealth Br. 7 (quoting *Montague*, 40 Va. App. at 437).

The larceny inference has a long pedigree under Virginia law. *See Price v. Commonwealth*, 62 Va. (21 Gratt.) 846, 869 (1872) (Moncure, J.). More than a hundred years ago, our Supreme Court called it a "general rule of the common law." *Gravely v. Commonwealth*, 86 Va. 396, 400 (1889); *see also Taliaferro v. Commonwealth*, 77 Va. 411, 413 (1883) ("It is well settled that possession of goods recently stolen creates a presumption that the person found in possession of them is the thief."). Many cases suggested that the larceny

---

[3] "The possession of stolen property contemplated by the law is exclusive possession, though it may be joint." *Castle v. Commonwealth*, 196 Va. 222, 227 (1954).

- 5 -

inference, when it applied, created a "presumption" that made "it incumbent" on the defendant "to account for such possession consistently with his innocence." *Price*, 62 Va. at 869. *See, e.g.*, *Gravely*, 86 Va. at 400 ("[T]he possession of goods recently stolen is *prima facie* evidence of guilt, and throws upon the accused the burden of accounting for that possession.").

In more recent years, however, our courts have recognized that "[m]andatory presumptions . . . violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Dobson v. Commonwealth*, 260 Va. 71, 75 (2000) (omission in original) (quoting *Francis v. Franklin*, 471 U.S. 307, 314 (1985)). In *Stokes v. Warden*, 226 Va. 111 (1983), for instance, our Supreme Court held that the trial court erred by instructing the jury in a criminal case that the "law presumes that a person intends the ordinary consequences of his voluntary acts.'" *Id.* at 117. The Court found that instruction indistinguishable from the one invalidated in *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), because "a reasonable jury could have viewed the presumption either as conclusive or as shifting the burden of persuasion to the defendant." *Stokes*, 226 Va. at 117.

By contrast, "[a] permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Dobson*, 260 Va. at 75 (quoting *Francis*, 471 U.S. at 314). Applying that reasoning, the Supreme Court in *Dobson* approved a jury instruction about the possession of recently stolen goods that was worded as a permissive inference, not a mandatory presumption. *Id.* at 76. In light of *Dobson*, the Virginia model jury instruction on the larceny inference now reads:

> If you believe from the evidence that (describe personal property)
> belonging to (name of person) was taken and carried away, that the
> taking was against the will and without the consent of the owner, and
> that the taking was with the intent to steal, then proof of the exclusive
> possession by the defendant of the recently stolen (describe property) is a

circumstance from which you may reasonably infer that the defendant was the thief, unless, from all the evidence, you have a reasonable doubt as to whether the defendant was the thief.

You may not find from the possession of recently stolen goods alone that the defendant is guilty of larceny.

The term "recently" is a relative term. Drawing an inference of guilt from unexplained possession becomes less reasonable as more time elapses from the time of theft.

"Exclusive possession" must be actual knowing possession.

Model Jury Instrs.—Crim. No. 36.300.

Having first argued for the larceny inference on brief, the Commonwealth acknowledged at oral argument that the larceny inference cannot be applied in cases of carjacking in light of *Bazemore v. Commonwealth*, 210 Va. 351 (1969). We agree. *Bazemore* explained that the larceny inference "has not been extended to robbery, and [the Court] decline[d] to do so." *Id.* at 352.[4] We have previously held that "carjacking is a species of robbery." *Sanchez v. Commonwealth*, 32 Va. App. 238, 241 (2000). Accordingly, we are bound by *Bazemore*'s refusal to extend the larceny inference to robbery offenses, which include carjacking.

Even so, *Bazemore* made clear that the trier of fact in a robbery case may still take note of the "unexplained possession of stolen property by the defendant," although it is "merely one circumstance to be considered" in determining whether the defendant committed the robbery. *Bazemore*, 210 Va. at 352. Based on *Bazemore*, Professor Bacigal has recommended this jury instruction in robbery cases:

The mere unexplained possession of stolen property by the defendant, without more, is not sufficient evidence to support a conviction of

---

[4] The Supreme Court in years past also declined to extend the larceny inference to "cases of burglary or house-breaking." *Gravely*, 86 Va. at 400. *See, e.g.*, *Christian v. Commonwealth*, 210 Va. 117, 119-20 (1969) ("There should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of burglary or housebreaking is superadded to that of larceny; but extrinsic mechanical indications may constitute such additional evidence." (collecting cases)).

robbery, but is merely one circumstance that may be considered. If you believe from the evidence that the defendant had in [his/her] possession property that was the subject of the robbery, but if you believe that the evidence as a whole fails to show beyond a reasonable doubt that the defendant [perpetrated/was one of those perpetrating] the robbery, then you cannot find the defendant guilty of robbery.

Ronald J. Bacigal et al., Va. Prac. Jury Instr. § 92:4 (2023).[5]

In short, even though the larceny inference does not extend to robbery or carjacking, the defendant's exclusive possession of the recently stolen vehicle (and the goods inside it) is a "circumstance" that the factfinder may properly consider in determining whether the defendant committed the crime. *Bazemore*, 210 Va. at 352.

B. *The Commonwealth presented sufficient evidence to prove that Walker was the perpetrator.*

With that background in mind, we conclude that the Commonwealth presented sufficient evidence from which the jury could find beyond a reasonable doubt that Walker was the carjacker. To be sure, Walker postulated a theory of innocence during his closing argument to the jury. He suggested that someone else stole the SUV and abandoned it, and then Walker (perhaps foolishly) got inside, drove it away, eluded police, and crashed. But Walker maintained that "being inside a stolen car" is not "evidence that you stole" it.

"The pertinent question in this appeal is whether a rational factfinder, in light of all the evidence, could have rejected [the defendant's] theories of innocence and found him guilty beyond a reasonable doubt." *Moseley*, 293 Va. at 464. We conclude "that a rational juror," considering "'all the evidence and the reasonable inferences that flow from that evidence,'"

---

[5] *Cf. Finney v. Commonwealth*, 277 Va. 83, 90 (2009) ("The Commonwealth can establish a prima facie case that a defendant broke and entered by (1) proving that goods have been stolen from a house into which someone has broken and entered; (2) justifying the inference that both offenses were committed at the same time, by the same person, as a part of a criminal enterprise; and (3) proving that these goods were found soon thereafter in the possession of the defendant." (quoting *Guynn v. Commonwealth*, 220 Va. 478, 480 (1979))).

could have properly rejected Walker's theory of innocence as "unreasonable." *Id.* at 465 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 517 (2003)).

First, Sergeant Pike spotted Walker driving the victim's stolen SUV on the Chippenham Parkway, close in time and proximity to the carjacking. The victim testified that she arrived home shortly after 11:50 a.m., and she was carjacked moments later, after she helped her husband to his scooter and before she could retract the handicap ramp. The victim ran after her car, flagged down her neighbor who happened to be driving by, and called 911 from her neighbor's car while searching for her stolen SUV. Sergeant Pike got the call at "about 11:50 or 11:55" a.m. He got in his car and drove to the Chippenham Parkway. Pike spotted the SUV when he got there and immediately chased after it. Officer Cleud said that he arrived at the victim's home at "around 12:10" p.m. and learned while there that the SUV had crashed. Cleud left for the scene "a couple of miles away," arriving around 12:25 p.m. In short, although the precise time that Pike first spotted Walker driving the SUV is unknown, the jury could reasonably conclude that it was close in space and time to where it was stolen.

Second, when Sergeant Pike spotted Walker driving the victim's SUV, the handicap ramp was still extended, sparking on the Chippenham Parkway as Walker sped along. A reasonable person could infer that Walker stole the car because, given the proximity in space and time to the crime scene, Walker did not have time to stop and retract the ramp.

Third, when Sergeant Pike activated his emergency lights upon spotting Walker, Walker eluded him, accelerating to speeds of 90 to 100 miles per hour to get away. "[F]light immediately following the commission of a crime . . . tend[s] to show a person's guilty knowledge of, and participation in, a criminal act." *Jones v. Commonwealth*, 279 Va. 52, 57 (2010). A person's "flight from a crime scene . . . generally cannot be explained in terms of innocent human behavior." *Id.* at 58. So "it is today universally conceded that the fact of an

accused's flight, . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991) (quoting *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970)).

Of course, "'to show a "consciousness of guilt,"' the evidence must demonstrate a 'nexus' between the flight and the alleged offense." *Cheripka v. Commonwealth*, 78 Va. App. 480, 503 (2023) (quoting *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002)), *petition for appeal docketed*, No. 230673 (Va. Sep. 19, 2023). "The nearer, however, to the commission of the crime committed, the more cogent would be the circumstance that the suspected person attempted to escape, . . . but it should be cautiously considered, because it may be attributable to a number of other reasons, than consciousness of guilt." *Turman v. Commonwealth*, 276 Va. 558, 565 (2008) (quoting *Anderson v. Commonwealth*, 100 Va. 860, 863 (1902)). Here, Walker suggested that he might have eluded Sergeant Pike, not because he had stolen the car himself, but because he knew the car he was driving was "probably stolen."

Even so, "[m]ultiple potential causes for a defendant's flight, including other offenses unrelated to the charged offense, do not undermine the nexus of the flight to the charged offense. Instead, such circumstances are properly submitted to and weighed by the [factfinder]." *Cheripka*, 78 Va. App. at 503. Thus, the jury could properly conclude that Walker fled from Sergeant Pike because Walker was the carjacker. The nexus between the crime and Walker's flight was clear. The carjacker stole the victim's SUV. And soon after—only a few miles away—Walker was found driving the SUV and fled when Sergeant Pike tried to stop him.

Finally, Walker was found in exclusive possession of both the victim's SUV and the valuables she left inside. The victim's purse was still on the front seat. The envelope of cash she withdrew from the bank was torn open, and some of the cash was strewn about. Walker also had cash in his front pocket, the only thing of value found on his person. The jury could reasonably

conclude that Walker was the carjacker from the fact that he was still in possession of the victim's car, her purse, and her cash. Indeed, the jury could find it extremely implausible that someone *else* stole the car and abandoned it. A wad of cash, no less than a stash of illegal narcotics, is "a commodity of significant value, unlikely to be abandoned or carelessly left" behind. *Ward v. Commonwealth*, 47 Va. App. 733, 753 n.4 (2006), *aff'd on other grounds*, 273 Va. 211 (2007).

## CONCLUSION

"Viewing this evidence in the light most favorable to the Commonwealth, we cannot say, as a matter of law, that no rational factfinder could have found [Walker] guilty . . . beyond a reasonable doubt." *Moseley*, 293 Va. at 465.

*Affirmed.*