## Edward W. Murray, Director, Virginia Department of Corrections

### v.

## Charles Richard Griffith

Record No. 911255

April 17, 1992

Present: All the Justices

*Katherine B. Toone, Assistant Attorney General; (Mary Sue Terry, Attorney General*, on briefs), for appellant.

*John C. Stephens, Jr. (Stephens & Roberts*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

The sole issue in this habeas corpus appeal is whether the trial court erred in ruling that an accused was denied effective assistance of counsel.

In 1989, appellee Charles Richard Griffith was convicted in the court below in a bench trial of robbery and malicious wounding, and sentenced to 17 years' imprisonment. In 1990, after withdrawing an appeal of the convictions, the prisoner filed a petition for a writ of habeas corpus naming appellant, Edward W. Murray, Director, Virginia Department of Corrections, as the respondent. In this collateral attack on the convictions, the convict asserted that his trial counsel was ineffective because he failed to personally interview a potential alibi witness. The habeas court

found in favor of the prisoner and granted the petition. We awarded the Director an appeal from the May 1991 order, which required the Commonwealth either to retry the prisoner or to release him.

At the criminal trial, the accused pled not guilty and, responding to the trial judge's questions, asserted that he was "entirely satisfied" with the services of his court-appointed counsel. Additionally, the accused stated that all his witnesses were present in court except one, whose testimony was received by stipulation.

The Commonwealth's evidence showed that in April 1989 the victim, a 64-year-old man living alone, was brutally beaten in his home in rural New Kent County. After the beating, the assailant took the victim's wallet containing $107 in cash, "turned all the burners on" to a kitchen gas stove, and broke a light bulb hanging from the kitchen ceiling. The victim, who had seen the accused in the neighborhood on other occasions, identified him as the assailant both immediately after the beating and at trial. The victim described the accused to a neighbor, who took the victim to a hospital after the attack, and to the investigating police officer, as "Chuckie," a young man "five five in height . . . stout with reddish hair." According to the victim, the accused went "in the direction of" the home of another neighbor, Charles Lewellyn Stewart, after the attack. As the victim was being transported to the hospital, the accused's truck was observed parked in Stewart's driveway.

The defendant, who testified he was "five seven and a half" in height, weighed 168 pounds, and had brown hair, denied committing the crimes. When interviewed several days after the incident, the accused told a police investigator that he knew nothing about it and that he had been at home, miles away from the scene, during the entire evening when the attack took place.

During the criminal trial, the defense attempted to convince the court that another person, one Mark Allen Ries, actually was the perpetrator. Ries, age 20, six feet tall, and weighing 305 pounds, had a learning disability. The accused, and a number of his friends and relatives, testified that Ries had admitted to them that he committed the crimes.

Ries testified that he did not commit the crimes, stating that he had been threatened by the accused and the accused's friends. They told him, according to Ries, that because of his disability "nothing much would happen" to him if he "took the blame" for

the offenses. Ries testified that the accused threatened him with a beating and even death if he did not tell the police that he was the perpetrator.

At the trial, the accused and Stewart testified that the accused was at Stewart's home drinking coffee and watching television at the time the crimes were committed.

During closing argument, defense counsel argued that the victim's identification of the accused as the assailant was unreliable and inaccurate, and contended that defendant's evidence established that Ries actually committed the crimes. Defense counsel did not rely upon the alibi evidence that the accused was visiting Stewart at the time of the crimes. Indeed, the prosecutor pointed out in rebuttal argument the inconsistencies in the evidence on that issue — the defendant stating immediately after the offenses that he was at home when the crimes were committed and producing evidence at trial that he was at Stewart's home at the time.

The trial court, in finding the accused guilty of the offenses, stated that he believed the victim's identification testimony. According to the judge, the identification, together with the accused's inconsistent accounts of his whereabouts at the time of the crimes, rendered the defendant's denial of guilt unworthy of belief.

At the habeas hearing, conducted by the same judge who tried the criminal case, the convict complained about trial counsel's failure to interview an alibi witness. The convict, through different counsel, submitted affidavits of one Joann Jernigan. In the affidavits, Jernigan claimed to have been at Stewart's home on the evening in question and stated she was prepared to testify that the accused was visiting there at the time the crimes were committed.

The Director submitted an affidavit of trial counsel who represented that he did not know Jernigan's name until the filing of the habeas corpus petition. According to counsel, he had asked the accused's wife, who he knew worked with a potential alibi witness, to "speak with" her "about the case." Counsel represented that the accused's wife told him "there were hard feelings" between the witness and the accused's family "and they did not have much to do with each other." Counsel stated that he "got the distinct impression" that the witness "could easily turn on" the accused. Counsel asserted that in view of Stewart's alibi testimony, he concluded that Jernigan's testimony would "be, at best, cumulative and perhaps damaging at trial." Thus, according to counsel, he

did not personally interview her, even though she was present in Stewart's home, asleep, when counsel talked to Stewart at Stewart's home prior to trial.

■ "The right to counsel which is guaranteed by the Sixth Amendment to the Federal Constitution and made applicable to the States through the Fourteenth Amendment includes the right to effective assistance of counsel." *Virginia Dep't of Corrections* v. *Clark*, 227 Va. 525, 533, 318 S.E.2d 399, 403 (1984). The constitutional guarantee of effective assistance of counsel "includes the right to the care and skill which a reasonably competent attorney would exercise for similar services under the circumstances." *Stokes* v. *Warden*, 226 Va. 111, 117, 306 S.E.2d 882, 884 (1983). In other words, the accused is entitled to counsel who is a reasonably competent attorney and to advice that is within the range of competence demanded of attorneys in criminal cases. *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984).

■ In a collateral attack on a conviction, however, "a prisoner not only has the burden of proving ineffective assistance of counsel, but also must prove actual prejudice as a result." *Stokes*, 226 Va. at 118, 306 S.E.2d at 885. *Accord Strickland*, 466 U.S. at 687.

In the present case, the habeas court, in a memorandum opinion, stated that the "threshold question" was whether trial counsel acted reasonably in failing to "interview an alibi witness based on the evidence presented in this case." The habeas judge said that he would "not review the trial strategy of counsel and hold that it was an error not to call Jernigan as a witness, but failing to interview her in order to form a sufficient basis for this tactical decision is another matter entirely." The court concluded: "There is simply no reason for counsel not to have at least spoken to this alibi witness in an 'alibi' type case." The court ruled that the "attorney committed professional error when he failed to conduct the amount of pretrial investigation that was necessary to furnish effective representation" to his client. Additionally, the court decided that the convict "was prejudiced by his counsel's professional errors" because the court was "convinced" there was a "reasonable probability" that the result of the criminal proceeding "would have been different."

■ We hold that the court below erred in ruling that trial counsel's conduct was not within the range of reasonable competence.

Thus, we do not reach the question whether the convict was prejudiced by any alleged defective performance of counsel.

"Judicial scrutiny of counsel's performance must be highly deferential" when an attorney's performance has been attacked as constitutionally ineffective. *Strickland*, 466 U.S. at 689. The "distorting effects of hindsight" should be avoided and the habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id. Accord Clark*, 227 Va. at 534, 318 S.E.2d at 403. A ruling upon a claim of actual ineffectiveness "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

In order to furnish constitutionally effective representation, "counsel must conduct a reasonable amount of pretrial investigation" so that counsel's trial decisions "will reflect informed deliberation." *Clark*, 227 Va. at 534, 318 S.E.2d at 404. The degree of investigation that is "reasonable" must depend "upon various factors, including the number and relative complexity of the issues in the case, the strength of the prosecution's case, and the overall strategy of counsel." *Id.* "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Indeed, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

Applying these principles to the present case, we are of opinion that the convict's trial counsel acted in a constitutionally reasonable manner in not personally interviewing Jernigan. A study of the criminal trial proceedings reveals that the so-called "alibi defense" was but an incidental part of overall defense strategy, and properly so. Counsel had at least eight witnesses, including the accused, to testify that Ries had admitted to them that he had committed the crimes. In addition, defense counsel had determined that the victim briefly had been a patient in a "mental institution" and had been convicted of a felony; this information was used at trial to attack the credibility of the victim's identification of the accused as the perpetrator. The main thrust of the defense, therefore, was to eliminate the accused as the perpetrator

by showing another person was the criminal agent and by attacking the validity of the identification.

The "alibi" that the accused was in a place different from the crime scene at the relevant time of the crimes was potentially unpersuasive in view of the inconsistencies between the accused's pretrial statement that he was at home and his trial testimony that he was at Stewart's home. Actually, it was to the prosecution's advantage to show that the accused was at Stewart's, in close proximity to the crime scene, near the time of the attack; indeed, the prosecutor in closing argument noted that Stewart placed the accused "right there next door . . . at Stewart's house" during the evening in question.

Therefore, given all the circumstances of the case, including the unimportance of the alibi aspect of the defense, we cannot say that, as of the time of counsel's challenged conduct, he acted unreasonably in failing to interview Jernigan. This is true especially since the accused's own spouse led counsel to believe the potential witness, whose testimony would have been merely cumulative, "could easily turn on" his client and prove harmful to the defense if placed on the witness stand.

Accordingly, we will reverse the order granting the petition for a writ of habeas corpus and will enter final judgment here dismissing the petition.

*Reversed and dismissed.*