## CIRCUIT COURT OF AUGUSTA COUNTY

Jeffrey S. Adkins

v.

Thomas W. Dixon, Jr.

Jeffrey S. Adkins

v.

Richard F. McPherson et al.

November 1, 1995

BY JUDGE DUNCAN M. BYRD, JR.

In this legal malpractice action, the plaintiff seeks damages from his former court-appointed attorney and his law firm as a result of alleged actions of legal malpractice resulting in his incarceration. The defendant has filed a five-count Demurrer and three-count Special Plea. The Court will address two counts of the Demurrer and one of the Special Pleas. Finding them to be dispositive of the issues in this case, the Court will not address the remaining issues presented by the Demurrer and the Special Plea. The relevant facts are as follows.

On October 3, 1989, the plaintiff, Jeffrey S. Adkins, was arrested on five felony warrants. On December 5, 1989, assistant public defender for Augusta County, Thomas W. Dixon, Jr., was assigned Adkins' case by the chief public defender for Augusta County, William E. Bobbitt, Jr. On December 7, 1989, felony charges were certified to the grand jury against Adkins. These charges included robbery of Rodger Miller, Judy Miller, Thomas Cash, and Karen Cash (four counts); burglary while armed; use or display of a firearm in robbery (four counts); and sodomy of Karen Cash. On January 22, 1990, the grand jury handed down a sixteen-count indict-

ment against Adkins. The six additional charges in the indictment, which had not been certified to the grand jury, included abduction of Rodger Miller, Judy Miller, Thomas Cash, and Karen Cash (four counts); aggravated sexual battery of Judy Miller, and unlawfully wearing a mask. On April 1, 1990, Dixon terminated his relationship with the public defender's office. Dixon thereafter served as Adkins' counsel by order of the Augusta County Circuit Court dated May 23, 1990. On May 31, 1990, Adkins was convicted by a jury as to the six charges added by the grand jury. On June 15, 1990, Adkins was convicted by a jury as to the original ten charges certified at the preliminary hearing. On September 7, 1990, Adkins filed his own petition for appeal with the Virginia Court of Appeals. Adkins raised in his petition a speedy trial objection to both the May 31, 1990, and June 15, 1990, convictions. On January 8, 1991, Dixon filed a petition for appeal with the Virginia Court of Appeals. The petition did not appeal the May 31, 1990, convictions on speedy trial grounds but did do so as to the June 15, 1990, convictions. On June 15, 1991, Dixon presented oral argument to the Virginia Court of Appeals. Dixon did not assert a speedy trial grounds for overturning the May 31, 1990, convictions. On July 2, 1991, the Virginia Court of Appeals denied the petition for appeal except as to the speedy trial argument involving the June 15, 1990, convictions. On January 22, 1992, the Virginia Court of Appeals reversed the June 15, 1990, convictions on speedy trial grounds. On February 13, 1992, Dixon filed a notice of appeal and petition for appeal with the Virginia Supreme Court. Dixon advanced a speedy trial argument as to the May 31, 1990, convictions in the petition. On April 29, 1992, the Virginia Supreme Court denied Adkins' petition for appeal. On July 18, 1992, Adkins filed a pro se habeas petition with the Virginia Supreme Court. Adkins based the petition on an alleged speedy trial violation relative to the May 31, 1990, convictions. On January 29, 1992, the Virginia Supreme Court denied Adkins' habeas petition. On December 20, 1992, Dixon filed the initial pleadings for a motion for judgment against Dixon in this case in the Augusta County Circuit Court. On October 17, 1994, Adkins' counsel filed a motion for judgment against Richard F. McPherson, Frank L. Summers, Jr., Victor M. Santos, and Thomas P. McPherson, partners in the law firm of Nelson, McPherson, Summers & Santos.

*Issue I: Where A Plaintiff in A Legal Malpractice Suit Claims That Failure by His Counsel to Raise A Speedy Trial Objection in An Appellate Proceeding Has Proximately Caused His Incarceration, Must That Plaintiff Allege and Prove His Innocence of the Crime for Which He Is Incarcerated?*

An attorney's representation is multi-faceted, and in a criminal representation, an accused might have no complaint against his attorney even though he be found guilty. This is certainly the case where an attorney works out a favorable plea agreement or is able in trial to prevent a conviction of a crime carrying greater punitive measures than one of which the client is convicted (e.g., manslaughter as opposed to second-degree murder). It is therefore apparent that an attorney need not obtain a verdict of not guilty to render effective assistance of counsel.

Similarly, an attorney may be effective even if his client is convicted of all charges. Such a case may involve overwhelming evidence against the client, or it might simply belie a predispositive against the client on the part of a court or jury.

In Virginia, to successfully prosecute a legal malpractice suit, a plaintiff must prove, *inter alia*, that an attorney's representation has proximately caused the plaintiff injury. *Hendrix v. Daugherty*, 249 Va. 540, 544, 457 S.E.2d 71, 74 (1995). The relevant inquiry, therefore, is not whether the client is convicted of a crime for which he is innocent, but whether the attorney neglected or breached a duty which caused some injury to the client. *Id.*, 249 Va. at 544, 457 S.E.2d at 74. Because the attorney's representation is multi-faceted, one part of the representation may cause injury to the client even though the rest of the representation does not. For example, a defense attorney who has carefully planned an excellent defense but fails to move to suppress highly damaging evidence which was illegally obtained has failed that part of the client's representation. Although the evidence is highly probative of guilt, if not properly admissible, and ultimately its exclusion could lead to an acquittal or a dropping of charges, a successful and proper defense may never even reach the merits of a case.

While the extent of injury in this example is unclear, the attorney's failure to move for suppression of the evidence is arguably the proximate cause of the injury received by the client. The injury is the worse position in which the client finds himself as a result of the introduction of the tainted evidence, and it is received without inquiry into the guilt or innocence of the client, and therefore, inferentially, despite the possible guilt of

the client. If the existence of injury may be determined, even though the injury is not quantifiable, without inquiry into the guilt or innocence of the client, logically there is no reason to require a plaintiff to demonstrate his innocence or else be barred from recovery.

Proximate cause in such a case, however, is difficult to find. If the client is in fact guilty of the crime, then the client's own actions arguably are the proximate cause of his injury (*see Peeler v. Hughes & Luce*, No. 94-0041, 1995 Tex. LEXIS 138, at *13 (1995)), whether or not the evidence is admitted. The requirement of a showing of innocence thus has a practical attraction because it settles the question of proximate cause. Innocence proves that the client's own actions did not proximately cause his injury, and therefore, the attorney's action or omission did.

On the other hand, where the injury is easily discerned as proximately caused by the attorney's representation, then the client's guilt or innocence is an irrelevant consideration because it does not aid in pinpointing proximate cause. In the case at bar, assuming arguendo that, as a matter of law, the conviction of May 31, 1990, violated the speedy trial statute, then the failure of Dixon to raise the issue as a bar to prosecution proximately caused Adkins' eventual incarceration. Even assuming arguendo that Adkins is in fact guilty of the May 31, 1990, charges, his own actions cannot proximately cause the injury of incarceration because he should have been "forever discharged from prosecution for such an offense" and was so as the expiration of the applicable time limit. Va. Code Ann. § 19.2-243 (Michie 1995). Adkins' actions are irrelevant, yet he is receiving injury. If his actions are not the proximate cause, then Dixon's alleged malpractice is.

The distinction between a failure to move for suppression of evidence and a failure to argue that prosecution is barred is that, in the second case, the injury is exactly quantifiable. This is because in the second case, by law, no prosecution ought to have taken place, and therefore, no punitive measures could have issued. Therefore, an attorney's failure to raise the issue proximately causes the injury of punitive measures, where no such action by law should occur.

Defendant in the case at bar cites Missouri and Texas law, as well as persuasive Virginia authority for requiring proof of innocence before a convicted defendant may sue his defense counsel for malpractice in the proceeding in which the client was convicted. The Missouri case is easily distinguished from the case at bar because the plaintiff charged malpractice by defendant for failure to "properly investigate, interview, subpoena,

and call witnesses, and cross-examine to establish [the plaintiff's] defenses of misidentification and alibi." *State ex rel. O'Blennis v. Wolfe*, 691 S.W.2d 498, 501 (Mo. App. 1985). None of these allegations could have operated to completely bar prosecution.

The Virginia case involved a plaintiff who, in his criminal trial, received the maximum sentencing for malicious wounding (twenty years) where the indictment charged only unlawful wounding (maximum sentence five years). *Barney v. Montgomery*, 24 Va. Cir. 412 (1991). The plaintiff pleaded guilty to the charge. Five years later, the plaintiff was granted *habeas* relief and pleaded guilty to unlawful wounding. The alleged malpractice was not a failure to raise an issue contesting the occurrence of prosecution/trial. The plaintiff, then, was properly tried.

The Texas case is closer to the case at bar. In *Peeler v. Hughes & Luce*, the plaintiff alleged malpractice on the basis that defendant did not inform her of the prosecution's offer of absolute transactional immunity. No. 94-0041, 1995 Tex. LEXIS 138 at *13 (1995). Therefore, she was in a position to avoid prosecution altogether, as Adkins might if his prosecution violated the speedy trial statute. The plaintiff did not allege her innocence of the crimes to which she had pleaded guilty. The Texas Supreme Court emphasized public policy in holding that the plaintiff had to allege and prove her innocence to recover. *Id.*, 1995 Tex. LEXIS at *5.

Application of the concepts of actual and legal guilt distinguish the case at bar from *Peeler*. Actual guilt is "guilt provable at the malpractice trial." David H. Potel, "Criminal Malpractice: Threshold Barriers to Recovery Against Negligent Criminal Counsel," 1991 Duke L.J. 542, 550, n. 24, and accompanying text (1981). Legal guilt is not only guilt properly established in the criminal context, but guilt to which there is no legal defense. This is a higher level of guilt. For example, a person actually guilty is not necessarily legally guilty because he might be able to raise a legal defense. If the statute of limitations has run on the crime, then the perpetrator is not legally guilty. Such legal defenses evince basic tenets in our legal system and society. Potel, 1981 Duke L.J. at 550, n. 45, and accompany text.

In *Peeler*, the plaintiff was legally guilty. She was properly convicted after her voluntary plea. The possibility of her not facing trial depending not upon a legal defense but on a deal to testify offered by the United States Attorney. The actual transaction was never finalized, and there is no evidence, other than the plaintiff's own allegation, that she would have accepted such a deal. On the other hand, Adkins alleges that he had a legal

defense, which, if merited, results in his not being legally guilty. A plaintiff who is legally guilty cannot demonstrate proximate cause from his attorney's act to the exclusion of his own. Potel, 1981 Duke L.J. at 547. For example, in *Barney*, 24 Va. Cir. 412 (1991), Judge Stump correctly pointed out that the plaintiff could not show proximate cause. This was because he had no legal defense as to his guilt.

To summarize, where the injury alleged is based on punishment received for a conviction in a trial which, as a matter of law, should not have been prosecuted, the issue of guilt or innocence is an irrelevant consideration. Guilt or innocence is relevant only when proximate causation is at issue. Guilt may proximately cause injury in a successful prosecution, but innocence cannot. The determination of innocence, therefore, is dispositive of proximate cause where the only possibilities are the client's actions or the attorney's representation. However, proof of innocence should not be required of the plaintiff in criminal defense malpractice suits where the alleged malpractice is a failure to raise a bar to prosecution. Therefore, defendant's Demurrer upon this ground should be overruled.

*Issue II: Must A Plaintiff Allege and Prove A Successful Habeas Proceeding?*

Prosecution of the first issue established that a determination of guilt or innocence can be a dispositive test of the locus of proximate cause. It, therefore, can be a relevant consideration in a criminal defense malpractice suit where the plaintiff has been convicted and alleges malpractice on the part of the attorney in the trial.

Resolution of the second issue will address the issue of whether, in the context of a malpractice suit, where a plaintiff alleges his trial should have been barred as a matter of law, a successful habeas proceeding must be alleged and proved.

The United States Supreme Court has held that a criminal defendant may not seek *habeas* relief though his Fourth Amendment rights are violated by the state if he had a full and fair opportunity to assert his constitutional claim in state court. *Stone v. Powell*, 428 U.S. 465, 49 L. Ed. 2d 1067 (1976). This indicates a willingness to let convictions stand which are, at least partly, based on constitutional violations. Nonetheless, this is a matter to be determined within the trial itself. As long as the trial itself afforded the full and fair opportunity to the criminal defendant to assert his constitutional right, the trial is determined to be proper.

On the other hand, the Court has held *habeas* relief may be available to a criminal defendant for racial discrimination in selecting a state grand jury. *Rose v. Mitchell*, 443 U.S. 545, 61 L. Ed. 2d 741 (1979). This indicates a reluctance to let some convictions stand which are, at least partly, based on constitutional violations. This inconsistency with the holding in *Stone* may be explained by pointing out that the grand jury's function is to determine whether a trial ought to occur. In *Stone*, the alleged constitutional violation was completely contained within the trial, in which the defendant had a full and fair opportunity to contest the admissibility of the evidence. There is no question whether the trial itself properly occurred. In *Rose*, the trial resulted from an indictment founded upon invidious and unconstitutional discrimination, from which the trial improperly occurred.

The result of *Stone* suggests that *habeas* relief ought not be available to a defendant if his trial properly occurred and the constitutional challenge involves admissibility of evidence probative of guilt. Expanding on this, violations within the trial itself may not afford *habeas* relief if the criminal defendant has the opportunity to challenge the violation and the challenge itself is unrelated to guilt or innocence. *See Stone*, 428 U.S. at 491, 49 L. Ed. 2d at 1086, n. 31. However, a challenge to the legitimacy of the occurrence of the trial can also provide *habeas* relief without regard to guilt or innocence, and this seems necessary. If guilt or innocence is determined at trial, then the verdict at a trial which ought never have occurred cannot be relief upon as a determination of guilt or innocence. The trial is the only proper event to determine guilt or innocence, and if the trial properly should have been prevented as a matter of law, then no determination of guilt or innocence should have been reached. Therefore, the guilt or innocence of the defendant is not a relevant consideration.

That the foregoing discussion is relevant to the case at bar may be demonstrated by application. Adkins challenges the legitimacy of the occurrence of the trial itself. When this happens, guilt or innocence is not a relevant consideration for the reviewing court. Instead, the reviewing court must make a determination of whether the trial properly occurred as a matter of law. If the court determines the trial improperly occurred as a matter of law, the *habeas* relief should be forthcoming. The malpractice case would then turn on whether the attorney breached his duty in failing to challenge the legitimacy of the occurrence of the trial. If the court determines as a matter of law that the trial did properly occur, then no *habeas* relief will be forthcoming, and the attorney did not breach his duty. In essence, the finding of the reviewing court is dispositive where the

legitimacy of the occurrence of the trial itself is challenged and not matters within the trial. Therefore, in the case at bar, plaintiff must allege and prove a successful *habeas* petition in order to recover.

Adkins has been denied *habeas* relief by the Virginia Supreme Court (*Murray v. Griffith*, 243 Va. 384, 416 S.E.2d 219 (1992)) and the Federal District Court in Roanoke (*Adkins v. Murray*, 872 F. Supp. 1491 (W.D. Va. 1994)). Therefore, under the current legal setting, he is legally guilty as the legal defense has been found meritless. The proximate cause of his injury then is his own criminal act under the current factual legal setting.

For these reasons, the defendant's Demurrer upon this ground should be sustained and the Motion for Judgment dismissed.

*Issue III: Does A Court-Appointed Counsel Enjoy Immunity from Legal Malpractice Suits?*

Notwithstanding this ruling, the court will address one of the remaining issues. Defendant includes among his special pleas that court-appointed attorneys should be immune from malpractice suits. The rule in Virginia originally established in *Minns v. Paul* was that court-appointed attorneys enjoy immunity from civil suit brought by their indigent clients. 542 F.2d 899, 901 (4th Cir. 1976). The Fourth Circuit followed the Third Circuit in declaring immunity for public defenders. *Brown v. Joseph*, 463 F.2d 1046 (3d Cir. 1972). In so doing, the court stressed two policy reasons for granting immunity: (1) a lack of immunity would dissuade able lawyers from participating in public defense; and (2) immunity allows discretion to attorneys to decline from pressing frivolous claims. *Id.*, 542 F.2d at 901. This second reason points out a distinction between indigent and non-indigent clients: for financial reasons, the non-indigent client will not press a frivolous claim. *Id.*, 542 F.2d at 901.

The Supreme Court addressed the question in *Ferri v. Ackerman*, 444 U.S. 193, 62 L. Ed. 2d 355 (1979). The holding in that case is that Federal law does not provide immunity to an attorney appointed by a federal court. The case did not answer the question as to the states. The Fourth Circuit stated in *Hall v. Quillen* that the *Ferri* decision "cast[s] serious doubt on the continued vitality of *Minns* . . . ." 631 F.2d 1154, 1155 (4th Cir. 1980) *cert. denied*, 454 L. Ed. 2d 1141 (1982). *Ferri*, however, is limited to federal law in the federal courts; Adkins is proceeding in state court where the last judicially expressed rule is that court-appointed attorneys have immunity.

The states, since *Ferri*, have split on this question. Those holding that immunity is not available to public defenders include Connecticut (*State v. Constantine*, 362 A.2d 871 (Conn. 1975)); Pennsylvania (*Reese v. Danforth*, 406 A.2d 735 (Pa. 1979)); Michigan (*Donigan v. Flynn*, 290 N.W.2d 80 (Mich. App. 1990)); and Florida (*Windsor v. Gibson*, 424 So. 2d 888 (Fla. App. 1982)). Those holding immunity is available are Delaware (*Browne v. Robb*, 583 A.2d 949 (Del. 1990)); and Minnesota (*Dziubak v. Mott*, 503 N.W.2d 771 (Minn. 1993)). Furthermore, three circuit courts in Virginia have granted immunity to Assistant Public Defenders. *Oliver v. Langer*, 32 Va. Cir. 45 (Richmond 1993); *Parker v. Berry*, No. CL92-2156 (Virginia Beach 1992); *Wenzler v. Hartsoe*, 32 Va. Cir. 334 (Suffolk 1994). All three found that the defendants were employees of the state; the Richmond and Virginia Beach Circuit Courts also found that the defendants could not choose whom they represented, that the Office of Public Defender does not charge fees to its clients, and that the defendants were supervised by more experienced state officials.

The fact that the states have split on the question of immunity for court-appointed attorneys demonstrates that *Ferri* did not settle the question for the states. The trend of Circuit Courts in Virginia is in favor of immunity for court-appointed public attorneys.

Plaintiff argues against the current trend of the Virginia courts. In support of this argument, he points out that the state has consented to malpractice liability for court-appointed attorneys by passing a law providing liability insurance for them. Va. Code Ann. § 2.1-526.8:1 (Michie 1995). Initially, the statute mentions court-appointed attorneys amongst other potential insureds: cities, towns, counties, constitutional officers, soil and water boards, etc. *Id.* § 2.1-526.8:1(A). Therefore, the statute clearly was designed to include all conceivable governmental entities which had not, as yet, been determined to enjoy immunity. Secondly, participation in the insurance plan is voluntary. *Id.* § 2.1-526.8:1(B). Naturally, a potential insured would not participate if the insured enjoyed sovereign immunity. Rather than answering the question of whether court-appointed attorneys have immunity, this statute merely provides an optional insurance plan for basically all governmental entities to insure against the possibility that they may be found to not enjoy immunity. This court finds the rationale in favor of immunity to be persuasive and will sustain the defendant's plea in bar upon this ground.