## CIRCUIT COURT OF ROANOKE COUNTY

Aleck J. Carpitcher

    v.

George M. Hinkle,
Warden

August 11, 2003

Case No. CL 02-6

BY JUDGE ROBERT P. DOHERTY, JR.

This matter comes before the Court on the Plaintiff's Petition for a Writ of Habeas Corpus. Plaintiff seeks relief from his convictions before a jury of one count of sexual battery of a minor, three counts of animate object sexual penetration of a minor, and one count of indecent liberties with a minor. He was found not guilty of one count of indecent liberties with a minor. No physical evidence of assault was presented to the jury. The convictions were based primarily on the testimony of the victim, a young girl who was age nine and ten at the time of the acts in question. The Court sentenced the criminal defendant to 73 years in the penitentiary, suspended after 38 years were served, and a fine of $20,000.00 that was also suspended. Nine months after sentencing, the child victim recanted that portion of her testimony relating to the sexual battery of a minor and the three counts of animate object penetration of a minor. She did not retract her testimony concerning the two counts of indecent liberties with a minor. As the Plaintiff was barred by the twenty-one day rule as set forth in Rule 1:1 of the Rules of the Supreme Court

of Virginia from being granted a new trial, he filed this Petition challenging the constitutionality of his convictions. An evidentiary hearing was held, after which the Court took the matter under advisement. Upon reviewing the transcript of the habeas corpus hearing, the criminal file of the Commonwealth's Attorney, the transcript of the criminal trial, arguments of counsel, and after considering the applicable case law, the Court denies the Plaintiff's Petition for a Writ of Habeas Corpus.

*Background*

The acts underlying the Plaintiff Carpitcher's criminal convictions occurred in early 1998. At the time of the crimes, the nine year old child-victim's parents had been divorced and the child was living with her mother, who had become romantically involved with the Plaintiff. Although the Plaintiff frequently traveled to participate in political protests, he would stay with the mother and the victim when he was in the area. The relationship between the Plaintiff and the mother was frequently turbulent and at times included physical violence. As a result of the Plaintiff's actions and the divorce of the child's parents, the child developed a disliking for the Plaintiff and wanted him out of the house. The evidence at the criminal trial was that during the Winter and Spring of 1998 the Plaintiff twice exposed himself to the victim while urinating, once asking her if she wanted to "touch it;" penetrated the victim with his finger on three separate occasions while he and the victim watched television in her mother's bedroom; and, touched her genital areas through her clothing on one occasion.

In May of 1998, the then ten year-old girl told her mother that she had been molested, but her mother took no action, believing as her daughter had told her that the Plaintiff had only touched her on her clothing. In July of 1998, while visiting her father, the victim told her father that she had been molested by the Plaintiff. She then gave a statement to an agent of the Department of Social Services in Harrisonburg. Later, she provided a statement to an investigator for the Roanoke County Police while a social worker for the Department of Social Services in Roanoke County was present. Some of the details in the two statements varied relating to the exact dates of the assaults, the clothing worn by the victim, the shows that were on television when the molestation occurred, and whether the bedroom door was open or closed. Her two statements concerning the facts of the sexual assaults themselves did not vary, but they were different from what she had told her mother in May.

After additional investigation, the Plaintiff was charged, arrested and provided with court appointed counsel. At the preliminary hearing, the child victim testified. Counsel for the trial defendant had an opportunity at this time to cross-examine the child-victim, to observe her demeanor and manner of testifying, and to make notes on her testimony. After the preliminary hearing, trial counsel examined the Commonwealth's entire prosecution file under their open file policy. That file contained both of the statements the child-victim had given to the authorities in Harrisonburg and in Roanoke County, the police report from the investigating detective, and other miscellaneous prosecution documents. A discovery order was entered, which among other things required the Commonwealth's Attorney to disclose exculpatory evidence. Although having discussed the prosecution's case with trial counsel, the Assistant Commonwealth's Attorney who prosecuted the case did not notify the criminal defendant's trial lawyer of inconsistencies in the victim's statements because he considered these inconsistencies to be both obvious and minor.

Prior to the trial of this matter, Plaintiff's counsel conducted an investigation. He met with his client in jail and by telephone on numerous occasions to discuss his bond, the facts of the case, and trial strategy. Having previously participated in the preliminary hearing in this matter and cross-examined the child-victim and observed her ability to testify, trial counsel drew the conclusion from her testimony that she was a believable witness. He also talked to the investigating detective and the Assistant Commonwealth's Attorney who was to prosecute the case. As mentioned above, during his investigation, trial counsel reviewed the Commonwealth's prosecution file that included the two statements the child-victim had given the authorities. He concluded that the child's testimony was materially consistent with the two previous statements she had given but that the testimony did differ in the details of her clothing, dates of the assaults, and the television programs that were on when the assaults occurred. He also concluded that they were different from what she had told her mother. Furthermore, after speaking with the homeowner who had lived with the Plaintiff, the child, and her mother at the time of the sexual assaults on the child, trial counsel concluded that the homeowner's testimony would be unfavorable in that it would paint the Plaintiff as abusive and often drunk. Plaintiff's trial counsel also interviewed the child-victim's teacher and learned that there had been no change in her performance or behavior at school, and that she was considered to be a truthful child, not prone to making up wild stories. Additionally, he spoke in detail with the child-victim's mother and procured a photograph of the Plaintiff on

which the face had been crossed-out by the victim. He also arranged for the child-victim's mother to testify in an attempt to discredit some of the child's testimony. He discovered and examined records of a physical examination of the victim that would corroborate the victim's allegations of molestation and was able to keep this discovery hidden from the Commonwealth. Finally, he attempted to speak directly to the child but was denied access to her.

As a result of his investigation, trial counsel developed both a theory and physical evidence to support an argument that the victim's testimony was false. He decided that the best available strategy was to pursue an alibi defense based on the supposed absence of the Plaintiff during the time in which one of the sexual assaults was alleged to have occurred. This, when coupled with testimony by the mother that discredited another portion of the child's testimony, the testimony of his client denying guilt, and limited cross-examination of the victim performed in a manner that would neither alienate the jury nor risk revealing the potentially devastating testimony by the victim of the corroborative medical examination, comprised the overall trial strategy. In furtherance of this defense, he arranged for multiple out of state witnesses to testify as to that alibi. The victim's mother knew of the corroborative nature of the medical examination but misled the Commonwealth's Attorney as to the exam results. While trial counsel made an attempt to illustrate some of the inconsistencies in the victim's statements, he primarily relied on the theory that, if he could discredit the victim's story as to one event, the remaining allegations would fall by necessity. However, in a trial based chiefly on the child-victim's testimony, the Commonwealth was able to show that the Plaintiff could have been in the Roanoke area for at least one or two days during the alibi period. The jury found the Plaintiff not guilty on one count of indecent liberties with a minor but guilty of all of the remaining counts and recommended that he be sentenced to seventy-three years to serve and a fine of $20,000. At the sentencing hearing, the Plaintiff's trial counsel was able to convince the trial judge to suspend thirty-five of those years and the $20,000 fine. No appeal was filed on the basis of a *Brady* violation.

Approximately nine months after Plaintiff's conviction, the victim recanted a portion of her story, claiming that it was a fabrication made for the purpose of destroying her mother's relationship with the Plaintiff and getting him out of the house. She did not recant her testimony about the charges against the Plaintiff regarding the two counts of indecent liberty with a minor. Thereafter, the Plaintiff filed this Petition for a Writ of Habeas Corpus.

The Plaintiff's Petition made five claims. First, the Plaintiff claimed that the procedural bar set by the twenty-one day rule constituted a violation of his substantive due process rights as afforded to him by the Fourteenth Amendment of the United States Constitution. Applying *Herrara v. Collins*, 506 U.S. 390, 407, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993), this claim was denied on the basis that the twenty-one day rule provided the Plaintiff with sufficient due process protection to meet Constitutional requirements. The Plaintiff also claimed that conviction of an "actually innocent" man violated his Eight Amendment right against cruel and unusual punishment as applied to the states through the Fourteenth Amendment. This claim was also denied because upon conviction the Plaintiff was, as a matter of law, no longer "innocent." *Id.* The Plaintiff's third claim alleged that the Commonwealth's Attorney violated the Plaintiff's constitutional rights by presenting testimony which he knew or should have known was false. *See Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). The Plaintiff voluntarily withdrew this claim at the evidentiary hearing on the grounds that it was unsupported by the evidence. The Plaintiff's fourth claim alleged a violation of his Sixth Amendment guarantee to effective assistance of counsel arguing that his trial counsel failed to perform an adequate pre-trial investigation of the victim's statements, failed to spend enough time examining the child's two pretrial statements, and that he failed to vigorously cross-examine her about differences in those statements. Finally, the Plaintiff alleged that the Commonwealth breached its affirmative duty to disclose exculpatory evidence when it failed to notify the Plaintiff's trial counsel about the inconsistencies in the victim's two pretrial statements concerning the times of the assaults, the clothing worn by the child when she was molested, the specific television programs she was viewing when the assaults occurred, and whether the bedroom door was open or closed. These last two claims were the subject of the habeas corpus evidentiary hearing.

The combined testimony of trial counsel and of the Commonwealth's Attorney at the evidentiary hearing showed that trial counsel had reviewed the two statements given by the child as they were in the prosecution's file when he read the entire file and that he had compared them with his notes of the child's testimony from the preliminary hearing. He found them to be materially consistent concerning the allegations and approximate dates of the sexual assaults. He also stated that his court appointed payment form did not accurately reflect all of the time that he spent on the case and that he had prepared his time sheet by reviewing his file after the trial. He testified that he

had actuality spent almost an hour reviewing the Commonwealth's file. He further stated that under-reporting hours was a common practice for court appointed attorneys in a major felony case as they almost always spent more time on the case than the maximum time for which they would be paid. More importantly, during questioning as to why he did not more aggressively examine the victim about her inconsistent statements, trial counsel stated that he had made the conscious decision not to pressure the victim on minor details between her testimony and her pretrial statements so as not to alienate the jury by appearing to "beat up" on the child-victim. Furthermore, he stated that he sought to achieve the tactical goal of minimizing the risk of disclosing that the child had undergone a pelvic examination a few months after the assault that appeared to corroborate her allegations of having been sexually molested. The treating physician testified at the habeas corpus evidentiary hearing that he had discovered damage to the child's hymen that had since healed, which was consistent with digital penetration of the vagina. He further stated that the degree of scarring was not inconsistent with the child's testimony as to the timing of the assaults. Such a revelation would have been disastrous to the defense. Illustrative of the defense's strategy, during the child's cross-examination at the criminal trial, she mentioned her medical exam and Plaintiff's counsel immediately changed the subject.

## Ineffectiveness of Counsel

The primary claim of the Plaintiff is that trial counsel's performance was ineffective and inadequate as to his trial preparation and as to his cross-examination of the child-victim. The Sixth Amendment of the Constitution, as applied to the states through the Fourteenth Amendment's due process clause, provides that every defendant in a criminal trial must be afforded the right to effective representation by counsel. Where counsel has been shown to be ineffective, the criminal defendant will be awarded a new trial. In order to prevail in a claim of ineffectiveness of counsel, the party bringing the claim first must show that trial counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Friedline v. Commonwealth*, 265 Va. 273, 277, 576 S.E.2d 491, 494 (2003) (a case of the Virginia Supreme Court applying the *Strickland* doctrine). Additionally, the party must show that he or she was prejudiced by the trial counsel's inadequate performance to the extent that he was deprived of a fair trial. *Strickland*, 466 U.S. at 688; *Friedline*, 265

Va. at 277, 576 S.E.2d at 494. Prejudice will be found when there is a reasonable probability that, absent the substandard performance the outcome would have been different. A reasonable probability exists when confidence in the outcome of the trial has been undermined. *Strickland*, 466 U.S. at 694. That said, there is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A reviewing court must be highly deferential of the trial counsel's performance. The goal of the review is "not to grade counsel's performance." *Strickland*, 466 U.S. at 688; *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Rather, the goal is to consider the counsel's choices with an eye toward reasonableness in all the circumstances that arise in the course of a trial. *Strickland*, 466 U.S. at 691. When trial counsel has made a strategic decision after adequate investigation of the law and facts, that decision is virtually unchallengeable. *Strickland*, 466 U.S. at 690-91. Therefore, the Court starts its review of trial counsel's performance with the proposition that absent a contrary showing, it is presumed to be reasonable. *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002).

The Plaintiff contends that his trial counsel was ineffective in that the trial counsel failed to conduct an adequate pre-trial investigation. Specifically, the Plaintiff argues that this failure arose from trial counsel's decision early in the process to focus on an alibi defense, thereby leading him to ignore evidence that could have potentially diminished the credibility of the victim. The Plaintiff contends that trial counsel's decisions should not be afforded the deference given to informed strategic decisions. Implicit in this contention is an underlying claim that the trial counsel failed to adequately attack the victim's credibility with her inconsistent statements during cross-examination. As each of these contentions could independently support an ineffectiveness of counsel claim, the Court will discuss each separately.

### 1. Inadequate Pre-trial Investigation

The Court finds that the Plaintiff's contention that his trial counsel failed to perform an adequate pre-trial investigation is without merit. In order to furnish constitutionally effective representation, trial counsel must conduct a reasonable amount of investigation so that counsel's trial decisions reflect informed deliberation. *Murray v. Griffith*, 243 Va. 384, 389, 416 S.E.2d 219, 221 (1992). The reasonableness of counsel's decisions will be determined by balancing a variety of factors, including the number and relative complexity of

the issues in the case, the strength of the prosecution's case, and the overall strategy of counsel. *Id.*

As brought out at the hearing, trial counsel testified that he examined the file for close to one hour. Although now five years later, trial counsel does not recall if the file contained both statements or not, the testimony of the Commonwealth's Attorney indicated that it did contain both statements. Trial counsel testified that his time sheet only reflected part of the time he spent on the case but that he had spent close to an hour actually reviewing the prosecution's file and comparing it with his notes from the preliminary hearing concerning the child's testimony. After reviewing the contents of the file, the Court finds as a matter of fact that a competent attorney could have adequately reviewed its contents within that length of time.

The Court also notes from the trial counsel's testimony that he was, prior to settling on an alibi defense, aware of inconsistencies in the victim's statements in regards to time and clothing. In light of his knowledge that the victim's statements contained some inconsistencies, his stated desire not to appear to "beat up" a sympathetic victim before the jury and the need to avoid allowing the child the opportunity to bring out the devastating corroborating medical evidence, the Court finds that the Plaintiff's trial counsel had sufficient foundation to support a strategic decision to pursue an alibi defense in the manner in which he did. The Court finds that the trial counsel prepared and presented a reasonable defense that included an alibi to at least one of the offenses, a denial of culpability by the Plaintiff, an attack on the child's credibility by her own mother, and a cross-examination of the child designed to cover the major elements of her testimony in such a way as not to alienate the jury or allow her to testify concerning the damaging corroborative evidence of her physical exam by the physician. The mere fact that the defense chosen was ultimately unsuccessful does not give rise to the conclusion that trial counsel's performance was inadequate. *See Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). The jury simply did not believe the Plaintiff's testimony denying guilt at his criminal trial as to all of the charges against him, although they obviously believed his testimony over that of the child's on the offense for which he was acquitted. Accordingly, the Court finds that the Plaintiff has failed to meet his burden in proving the first prong of *Strickland*, and therefore denies his claim of ineffectiveness of counsel arising from inadequate pre-trial investigation.

## 2. *Impeachment of Credibility*

The Court also finds that the Plaintiff has failed to carry his burden in showing that the trial counsel's failure to impeach the victim by a more aggressive cross-examination was so egregious as to constitute ineffectiveness of counsel. Where trial counsel fails to present available exculpatory evidence, counsel's performance will be deemed to be deficient unless there is some cogent consideration justifying the failure. *Griffin v. Warden*, 970 F.2d 1355, 1358 (4th Cir. 1992). The trial counsel's testimony and a review of the trial transcript indicate that trial counsel did in fact question the victim about some of the inconsistencies in her statements. As stated above, trial counsel was trying to pursue a line of cross-examination that would point out some inconsistencies in her testimony, that would not appear to "beat her up," and that would prevent her from revealing that she had undergone a physical examination that indicated the likelihood of sexual abuse. The revelation of the information concerning the medical examination to the jury would have been, to put it mildly, disastrous to the Plaintiff's defense. Furthermore, as the Commonwealth's Attorney was unaware of this physical examination, trial counsel properly believed that it was imperative to keep this information hidden. These concerns provided sufficient justification for the manner in which trial counsel handled the victim during cross-examination. *Cf. Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003) (a case where counsel was found to be ineffective for failing to aggressively challenge the credibility of witnesses where no other defense was available). The Court finds that trial counsel's cross-examination fit with his trial strategy, which was not unreasonable; as such, there is no need to conduct an analysis of *Strickland*'s second prong. As there has been no showing of ineffectiveness of counsel, the Court denies the Plaintiff's Petition as it is based on a claim of ineffectiveness of counsel.

## *Brady Claim*

The second claim raised by the Plaintiff is that the Commonwealth's Attorney breached his duty to disclose exculpatory evidence that was material. *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed 2d 215 (1963). In particular, the Plaintiff points to the failure of the Commonwealth Attorney to provide a copy of the statements made by the child and to point out the variances in them. However, the evidence before the Court shows that the Plaintiff has procedurally defaulted his *Brady* claim. As set forth by the

Virginia Supreme Court, a party who could have raised a *Brady* claim on appeal yet failed to do so is thereafter barred from raising such a claim. *Slayton v. Parrigan*, 215 Va. 27, 29-30, 205 S.E.2d 680, 682 (1974). The only exception to this bar arises when the aggrieved party is able to make a showing of ineffectiveness of counsel. *Id.* Since the Court has determined that there was no ineffectiveness of counsel as defined by *Strickland*, the Court finds that the Plaintiff's *Brady* claim fails.

But even in the absence of a procedural default, the Plaintiff would not be able to advance his claim under *Brady*. Under *Brady* and its progeny, a potential *Brady* claim is lost if trial counsel was aware of the undisclosed material and failed to pursue it or if the material was available from other sources. *United States v. Ellis*, 121 F.3d 908, 914 (4th Cir. 1997); *United States v. Wilson*, 901 F.2d 378, 380-81 (4th Cir 1990) ("Where exculpatory material is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine."). Here, the evidence in question was not only available to the Plaintiff, it was considered by trial counsel in developing a viable defense strategy for this case. The undisputed facts show that the material was contained in the prosecution file and that Plaintiff's trial counsel examined this file before trial and searched the file for inconsistencies in the victim's statements. He also compared that file with the notes he took during the child's testimony at the preliminary hearing. In light of these facts, the Court finds that the material was not suppressed or hidden by the Commonwealth. Finally, as to whether the inconsistencies were material, the Court notes that both the Commonwealth's Attorney and trial counsel believed the inconsistencies in the victim's statements as to dates of the assaults and the clothing of the victim, et cetera, were mere details and that the statements were consistent as to the main elements of the crimes charged. The Court agrees with these conclusions. Therefore, because the inconsistent statements in the prosecution file were made available to trial counsel by the Commonwealth and because trial counsel was aware of their existence and the differences in them and because he read the entire prosecution file, the Court finds that the Commonwealth did not breach its duty under *Brady* to divulge exculpatory evidence.

As the Plaintiff is unable to prevail in either of his claims, his Petition for a Writ of Habeas Corpus is denied.